DECISION
Appellants, Abe Bahgat, Paula J. Trout and Stewart E. Roberts, appeal from judgments of the Franklin County Court of Common Pleas imposing sanctions against appellant Bahgat pursuant to Civ.R. 11 and R.C. 2323.51, and against appellants Trout and Roberts pursuant to R.C. 2323.51.
On September 8, 1995, plaintiffs-appellees, Yee Lin Haney, Yee Development, Corp., and Global Toys, Inc. (collectively "appellees"), filed a complaint against appellant Trout, aka Whan Hee Choi, asserting causes of action for breach of contract and legal malpractice. Appellees had previously engaged the services of Trout, an attorney, to represent appellees in a real estate matter involving loan transactions between appellees and G.D. Group, Inc. and/or David Weaver.
The case came for trial before the trial court beginning March 18, 1999. Attorney Stephen Maher represented Trout during the proceedings. At trial, appellees' expert witness, attorney Henry Wickham, testified that Trout failed to conform to the standard of care to be exercised by a competent, skilled and prudent attorney in representing the legal and business interests of a lender involved in a commercial real estate transaction. No expert witnesses were presented on behalf of Trout. By judgment entry filed May 19, 1999, the trial court rendered judgment against Trout and in favor of appellees. Trout did not file an appeal from the trial court's judgment.
On May 18, 2000, appellant Bahgat, acting as counsel for Trout, filed a motion for relief from judgment pursuant to Civ.R. 60(B). As grounds for relief, Trout's motion asserted "surprise, newly discovered evidence, fraud, misrepresentation and other misconduct by the adverse party and other reasons justifying relief from judgment." Attached to the motion was the affidavit of Trout. The trial court set a hearing date on the Civ.R. 60(B) motion for July 24, 2000.
On June 30, 2000, Bahgat filed a motion to withdraw as counsel for Trout. In his memorandum in support, Bahgat argued that, during the course of his investigation for the Civ.R. 60(B) motion, he had spoken with attorney Maher, and Maher had made a statement "that goes to the heart of Defendant's meritorious claim or defense." Also on June 30, 2000, Trout filed a motion for continuance. On July 18, 2000, Bahgat, on behalf of Trout, filed a motion seeking the withdrawal of Timothy Crowley, counsel for appellees, from the case. In the accompanying memorandum, Bahgat indicated that he intended to call Crowley as a witness.
The hearing on the Civ.R. 60(B) motion was conducted by the trial court on July 24, 2000. Neither Trout nor Bahgat appeared at the hearing. Appellant Roberts made an appearance on behalf of Trout. At the end of the hearing, the trial court indicated its intent to deny Trout's Civ.R. 60(B) motion, and the trial court subsequently denied the motion by entry journalized August 18, 2000. In its entry denying the motion for relief from judgment, the trial court found that the motion and accompanying affidavit were "not meritorious" and contrary to the evidence presented at the 1999 trial; the trial court further found that the motion was "not warranted under existing law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law, and was not filed within a `reasonable time' as required by Civil Rule 60(B)." The trial court also denied Trout's motion seeking withdrawal of her counsel, as well as Trout's motion seeking withdrawal of appellees' counsel. Finally, the court denied Trout's motion for continuance.
On July 27, 2000, appellees filed a motion for sanctions against appellants Bahgat and Trout pursuant to Civ.R. 11 and R.C. 2323.51. On August 21, 2000, appellant Roberts, acting on behalf of Trout, filed a motion to dismiss appellees' motion for sanctions for lack of subject matter jurisdiction. On August 22, 2000, Bahgat filed with the Ohio Supreme Court a motion and affidavit of prejudice to disqualify the trial judge. Bahgat also filed a motion with the trial court, requesting that the judge recuse himself from any further proceedings in the case. On August 29, 2000, appellants filed a memorandum contra appellees' motion for sanctions. Appellees subsequently filed a motion to strike appellants' memorandum contra. On September 6, 2000, appellees filed a supplemental motion for Civ.R. 11 sanctions against Bahgat, and for R.C.2323.51 sanctions against Bahgat, Trout and Roberts. By decision and entry filed September 29, 2000, the trial court denied Trout's motion to dismiss appellees' motion for sanctions.
On October 10, 2000, Trout filed a motion in limine, seeking an order by the trial court to prohibit the testimony of attorney Maher at the hearing on sanctions. In the accompanying memorandum, Trout asserted that the potential testimony of Maher would infringe upon the attorney-client relationship between Trout and Maher, Trout's former counsel.
The trial court conducted a hearing on appellees' motion for sanctions beginning September 28, 2000. The trial court filed findings of fact and conclusions of law on November 9, 2000. By judgment entry filed November 22, 2000, the trial court imposed sanctions against Bahgat under Civ.R. 11 and against Bahgat and Trout under R.C. 2323.51. The court also imposed sanctions against Roberts pursuant to R.C. 2323.51.
On appeal, appellants Trout and Roberts set forth the following nine assignments of error for review:
 I. The Trial Court committed error prejudicial to the Defendant and Respondent Appellants in failing to recuse itself from hearing the plaintiffs' motions for Sanctions for Frivolous Conduct when it had previously announced its opinion on that issue, in open court and in an Entry, prior to the Motion being filed, and without affording Appellants the procedural safeguards set forth in O.R.C. Section 2323.51.
 II. The Trial Court committed error prejudicial to the Defendant and Respondent Appellants in failing to sustain the Defendant's Civil Rule 12(B)(1) Motion to Dismiss for lack of subject matter jurisdiction.
 III. The Trial Court committed error prejudicial to the Defendant-Appellant by striking from the file the Defendant's Memorandum Contra filed on the merits of the issues before the Court.
 IV. The Trial Court committed error prejudicial to the Defendant-Appellant by refusing to allow Counsel for Defendant to examine a witness called to testify at trial.
 V. The Trial Court committed error prejudicial to the Defendant-Appellant in holding that because the Defendant was not present at the hearing, she was denied various procedural and substantive rights.
 VI. The Trial Court committed error prejudicial to the Defendant and Respondent Appellants in failing to sustain the Defendant's Motion in Limine.
 VII. The Trial Court committed error prejudicial to the Defendant-Appellant with respect to various evidentiary rulings.
 VIII. The Trial Court committed error prejudicial to the Defendant and Respondent Appellants by allowing the testimony of Defendant-Appellant's former legal counsel, in violation of the Defendant-Appellant's right to confidentiality pursuant to O.R.C. Section 2317.02 and Canon 4 of the Code of Professional Responsibility.
 IX. The Trial Court committed error prejudicial to the Defendant and Respondent Appellants in its findings of frivolous conduct and imposition of sanctions.
Appellant Bahgat has set forth the following four assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL JUDGE ERRED AND ABUSED HIS DISCRETION IN REFUSING TO RECUSE HIMSELF PRIOR TO HEARING EVIDENCE ON THE MOTIONS FOR SANCTIONS AS HIS CONDUCT AND STATEMENTS CLEARLY DEMONSTRATED A BIAS AND PREJUDICE AGAINST APPELLANT AND HIS FORMER CLIENT, TROUT AND THAT HE HAD PERSONAL KNOWLEDGE AFFECTING HIS IMPARTIALITY.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN IMPOSING SANCTIONS FOR A VIOLATION OF CIV. R. 11 AND R.C.2323.51 AGAINST APPELLANT.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ABUSED ITS DISCRETION IN EVIDENTIARY RULINGS THEREBY PREJUDICING APPELLANT AND DENYING HIM A FAIR TRIAL AND DUE PROCESS.
ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ABUSED ITS DISCRETION IN PROHIBITING APPELLANT FROM INQUIRING INTO THE NATURE OF THE FEE AGREEMENT BETWEEN APPELLEE AND HER COUNSEL.
The first assignment of error of appellants Trout and Roberts and the first assignment of error of appellant Bahgat are interrelated and will be considered together. Under these assignments of error, appellants contend that the trial judge erred in failing to recuse himself from hearing appellees' motion for sanctions.
Appellants argue that, during the July 24, 2000 hearing on Bahgat's Civ.R. 60(B) motion, the trial judge stated in open court that he found the motion to be frivolous and a delay tactic. Appellants maintain that the comments of the trial judge indicate that he had already decided the issue of frivolous conduct prior to the hearing on that matter. Appellants further note that the trial judge, who also tried the underlying 1999 malpractice action, had previously initiated a disciplinary proceeding against appellant Trout by filing a complaint with the Office of the Ohio Disciplinary Counsel, alleging violations of the Code of Professional Responsibility. Appellants contend that an adversarial relationship developed between the trial judge and Trout, requiring the judge's recusal.
We note that, on August 21, 2000, appellant Bahgat filed with the Ohio Supreme Court, pursuant to R.C. 2701.03, a "motion and affidavit of prejudice to disqualify" the trial judge. In the accompanying memorandum, Bahgat raised the same issues as now raised on appeal, i.e., that comments by the trial judge at the July 24, 2000 hearing indicated that the judge had already decided the matter, and that the trial judge had previously submitted a grievance against appellant Trout with the Office of the Ohio Disciplinary Counsel.
By entry dated September 5, 2000, Chief Justice Thomas J. Moyer of the Ohio Supreme Court denied appellant Bahgat's affidavit of disqualification, holding in relevant part:
 Affiant seeks Judge Sheward's disqualification from further proceedings in the underlying case based on the judge's participation in the original trial, the fact that the judge filed a disciplinary complaint against the defendant based on evidence that was presented at that trial, and because the judge, in overruling various motions filed by affiant, found the motions to be frivolous and filed for purposes of delay. Having reviewed the record before me, I cannot conclude that these adverse rulings and actions establish the existence of bias or prejudice on the part of Judge Sheward.
Thus, in the present case, the Chief Justice of the Ohio Supreme Court decided Bahgat's motion for recusal. Appellants seek, however, for this court to conclude that the trial judge's filing of a prior disciplinary complaint against a party and the judge's comments that various motions filed by an appellant were frivolous and filed for purposes of delay "warranted disqualification when the Chief Justice of the Ohio Supreme Court has already determined that [they] did not." State v. Wolfe (June 17, 1996), Gallia App. No. 95CA04, unreported (finding that appellate court was "without authority to review a judicial disqualification which has been decided by the Chief Justice"). The Ohio Supreme Court has held that, "when the Chief Justice dismisses an affidavit of disqualification as not well taken, `the Chief Justice's ruling is res judicata as to the question.'" State v. Getsy (1998), 84 Ohio St.3d 180, 185. See, also, Goddard v. Children's Hosp. Med. Ctr. (2000), 141 Ohio App.3d 467, 473
("Only the Chief Justice of the Ohio Supreme Court, or any judge of that court designated by the Chief Justice, has jurisdiction to determine a common pleas disqualification. * * * Moreover, once the Chief Justice has dismissed an affidavit of disqualification as not well taken, the ruling of the Chief Justice is res judicata as to the question"). Thus, to the extent appellants request this court to rule contrary to the Chief Justice on the same issues he has already decided, appellants' assignment of error is without merit.
Appellant Bahgat contends, in his reply brief, that the Chief Justice did not have the opportunity to observe the trial judge's conduct during the sanctions hearing, including various rulings on evidentiary matters which, Bahgat contends, is further indication of the trial judge's bias. However, "[a] judge's rulings on issues of law are appealable and, therefore, generally are not considered evidence of bias or prejudice." Wolfe, supra. Further, even assuming that this court had jurisdiction to consider the issues raised by appellants, our review of the record does not convince this court that the trial court, despite its apparent frustration with the parties at times, was unable to "rationally evaluate the evidence in appellant's case and properly render a verdict." State v. Wagner (1992), 80 Ohio App.3d 88, 94.
Based upon the foregoing, the first assignment of error of appellants Trout and Roberts and the first assignment of error of appellant Bahgat are overruled.
Under their second assignment of error, appellants Trout and Roberts argue that the trial court erred in failing to sustain Trout's motion to dismiss appellees' motion for sanctions for lack of subject matter jurisdiction. In the accompanying memorandum filed before the trial court, Trout argued that, pursuant to R.C. 2323.51, appellees were required to have filed the motion within twenty-one days of the trial court's judgment entered in the underlying malpractice case on May 19, 1999. In support of their contention, appellants cited R.C. 2323.51(B)(1), which provides in part that, "at any time * * * within twenty-one days after the entry of judgment in a civil action * * * the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action."
The trial court denied Trout's motion to dismiss, holding that appellees "have not moved for sanctions as to the underlying malpractice case but, rather, have moved for sanctions as to the alleged frivolous conduct that arose out of the filing of the Civ.R. 60(B) motion." The court further held that the cases relied upon by Trout, Beaver Excavating Co. v. Perry Twp. (1992), 79 Ohio App.3d 148, and Justice v. Lutheran Social Serv. of Cent. Ohio (1992), 79 Ohio App.3d 439, "do not concern the issue of frivolous conduct in post-judgment matters." Thus, the court held that appellees were entitled to bring a claim pursuant to R.C. 2323.51 for post-judgment matters, and that appellees had timely filed their motion within the twenty-one day period.
We find no error with the trial court's determination. R.C. 2323.51
provides for the award of attorney's fees as a sanction for frivolous conduct. R.C. 2323.51(A)(1)(a) defines "conduct" to include "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, or the taking of any other action in connection with a civil action." In the present case, Bahgat's filing of the May 18, 2000 Civ.R. 60(B) motion for relief from judgment constituted the taking of action in connection with a civil action, i.e., the underlying malpractice case in which the trial court ruled against Trout. See Oates v. Oates (Mar. 16, 1989), Franklin App. No. 88AP-701, unreported (filing of a post-judgment collection proceeding constitutes the "taking of action" in connection with civil action previously filed in federal court).
We note that, in support of their argument, appellants rely upon the same cases, Beaver Excavating and Justice, supra, cited in their motion before the trial court. We agree with the trial court, however, that those cases are inapposite to the instant case, as neither of the cases cited by appellants involve a party seeking an award of attorney's fees based on conduct arising out of a post-judgment proceeding. As noted by appellees, the alleged frivolous conduct in the instant case did not occur until the filing of the Civ.R. 60(B) motion on May 18, 2000. Thus, notwithstanding that the judgment in the underlying claim was rendered in 1999, where appellants subsequently filed a Civ.R. 60(B) motion in connection with that action, the trial court had jurisdiction to entertain appellees' motion for sanctions.
Based upon the foregoing, the second assignment of error of appellants Trout and Roberts is without merit and is overruled.
Under their third assignment of error, appellants Trout and Roberts assert that the trial court erred in striking Trout's memorandum contra appellees' motion for sanctions, filed August 29, 2000, from the record. Appellants note that, at the opening of the September 28, 2000 sanctions hearing, the trial court ordered the memorandum contra stricken. Appellees had previously filed, on September 6, 2000, a motion to strike Trout's memorandum contra, as well as a reply memorandum filed by appellants, on the basis that these filings were untimely under Loc.R. 21.01. The record indicates that, following the filing of appellees' motion for sanctions on July 27, 2000, the trial court, by entry filed August 17, 2000, granted Trout an extension of time until August 21, 2000, to file her memorandum contra. As noted above, Trout did not file her memorandum contra until August 29, 2000; however, on August 21, 2000, Trout filed her motion to dismiss appellees' motion for sanctions for lack of subject matter jurisdiction.
Appellants argue that appellees' motion for sanctions was a "new request for relief" for which a "responsive pleading" (i.e., memorandum contra) was allowed. In support, appellants cite the provisions of Civ.R. 12(A)(2). Pursuant to Civ.R. 12(A)(2), the service of certain motions alters the periods of time in which to file a response to a pleading such that, "if the court denies the motion, a responsive pleading, delayed because of service of the motion, shall be served within fourteen days after notice of the court's action." Appellants argue that, while the motion to dismiss for lack of subject matter jurisdiction was pending, the time for filing the memorandum contra was stayed under Civ.R. 12(A)(2).
Appellants have cited no case law for the proposition that a motion for sanctions is a pleading. See Civ.R. 7(A) (defining a pleading as a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint or a third-party answer). Here, the trial court noted that appellants had been granted an extension to file their memorandum contra, but that appellants had filed "something besides a response" (i.e., appellants' motion to dismiss for lack of subject matter jurisdiction). (Tr. at 28.) Inasmuch as Civ.R. 12(A) applies to pleadings, we are unable to conclude that the trial court erred in failing to find that the time requirement for filing the memorandum contra was altered under Civ.R. 12(A)(2) by the filing of the motion to dismiss.
Even assuming that the trial court erred in granting appellees' motion to strike as untimely, appellants cannot show prejudice. We note that appellants' memorandum contra raised three issues. First, appellants asserted that the trial court lacked subject matter jurisdiction because appellees' motion for attorney's fees was untimely as it was filed more than twenty-one days after the May 19, 1999 judgment entry. We have previously addressed and rejected appellants' argument on that issue.
Second, appellants' memorandum contra asserted that the trial judge should recuse himself from hearing appellees' motion for sanctions on the basis that the trial court was biased against appellants. We have also addressed and found no merit to this argument in addressing appellants' first assignment of error.
Finally, appellants, in their memorandum contra, challenged appellees' motion for sanctions on the merits. However, as noted by appellees, counsel for appellants was permitted to orally argue at the evidentiary hearing the same matters that were contained in the memorandum contra regarding the merits. Accordingly, appellants cannot show prejudice by the trial court's action in striking the memorandum contra.
Based upon the foregoing, the third assignment of error of appellants Trout and Roberts is without merit and is overruled.
Under their fourth assignment of error, appellants Trout and Roberts assert that the trial court erred by refusing to allow their counsel to examine one of the witnesses called to testify. Specifically, appellants note that the trial court permitted counsel for appellant Bahgat to call Geoffrey Stern as an expert witness. Following the direct examination of Stern, counsel for appellees engaged in cross-examination of the witness. Prior to redirect, counsel for Trout asked if he could "inquire" of the witness and the trial court responded, "no." (Tr. at 107.) Following redirect examination by counsel for appellant Bahgat, counsel for Trout again asked if he could "inquire of the witness," and the trial court again refused to allow him to question the witness. (Tr. at 111.)
In general, the admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of discretion. Renfro v. Black (1990),52 Ohio St.3d 27, 32. In the present case, assuming, arguendo, that the trial court should have allowed counsel for Trout to ask questions of the witness, we agree with appellees' contention that appellants have failed to preserve this claimed error for appellate review. More specifically, counsel for Trout failed to proffer the questions he intended to ask the witness and, as such, we have no way to determine whether the limitation imposed by the trial court prejudiced appellants. Further, appellants do not assert on appeal what the substance of the questioning would have been, and appellants have presented no reason for this court to find that any potential questions counsel for appellant Trout wished to ask were not asked by counsel for appellant Bahgat during redirect examination.
Accordingly, the fourth assignment of error of appellants Trout and Roberts is without merit and is overruled.
The fifth, sixth and eighth assignments of error of appellants Trout and Roberts are interrelated and will be discussed together. These assignments of error pertain to the trial court's overruling of appellants' motion in limine to preclude the testimony of appellant Trout's former legal counsel. Under the fifth assignment of error, appellants assert that the trial court committed error by denying Trout various procedural and due process rights because she was not present at the hearing. In their sixth assignment of error, appellants argue that the trial court erred in failing to sustain appellants' motion in limine. Under the eighth assignment of error, appellants contend that the trial court erred by allowing the testimony of appellant Trout's former legal counsel, arguing that such testimony was privileged under R.C. 2317.02.
R.C. 2317.02, dealing with privileged communications, provides in part as follows:
 The following persons shall not testify in certain respects:
 (A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421
of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject[.]
The record indicates that, on October 10, 2000, appellant Trout filed a motion in limine, seeking to prohibit the testimony of attorney Maher. In her supporting memorandum, Trout asserted that she anticipated that appellees intended to call Maher as a witness to explain why he did or did not do certain things in the preparation and presentation of Trout's case in the underlying trial. Trout asserted, however, that in order for Maher to offer explanations, he would be required to reveal privileged communications between himself and Trout, his former client.
At the outset, we note that appellants do not specifically indicate what portions of the testimony of Maher were prejudicial to their case. Rather, appellants only generally contend in their appellate brief that, "[t]o the extent that Mr. Maher's testimony contradicted or diminished Mr. Stern's testimony and opinion that Appellants had raised a legitimate and credible issue of attorney breach of standards in the Rule 60(B) Motion to Vacate, the testimony was prejudicial to the Appellants." However, our review of the testimony of Maher indicates that, even accepting that some of the testimony may have been privileged based on the attorney-client privilege, appellants have failed to show prejudice.
During the direct examination of Maher by counsel for appellants, counsel asked Maher about Plaintiff's Exhibit MC-2, an October 4, 1994 letter from Trout to appellee Haney. In the letter, Trout indicated that, "[a]s a follow-up to our telephone conversation this afternoon and per your request, I have again `reissued' the billings for the months of March and April, 1994, for both Global Toys, Inc., and Yee Development Corporation." (Plaintiff's Exhibit MC-2.) Counsel for appellants objected to inquiry regarding the exhibit, asserting that it involved matters involving the attorney-client privilege. The trial court overruled the objection.
When asked by counsel for appellee whether he had "any recollection of any such reissuance of billings," Maher responded:
 * * * Well, I have specific recollection of the basically transaction in issue. Ms. Trout did consistently complain about the dynamics of Ms. Haney purportedly asking for bills or reissuance of bills. And in connection with that, I very well could have reviewed M.C. 2 during pretrial preparation. However I determined that it didn't make any difference who's issuing or reissuing. I mean, I was dealing with a March transaction. And what happened with the bills in October, personally, from an attorney's standpoint representing Paula Trout, it didn't make a doggone bit of difference to me. (Tr. at 147-148.)
Appellees argue that appellant Trout has failed to demonstrate that Maher's testimony, indicating he might have seen the October 4, 1994 letter prior to appellant Bahgat's filing of his May 18, 2000 Civ.R. 60(B) motion, was prejudicial to Trout when Trout, the author of the letter, obviously had herself seen it before she executed her sworn affidavit (filed with Bahgat's motion). We agree that appellant Trout has made no showing of prejudice from the introduction of this testimony.
Counsel for appellants also objected when Maher was asked during direct examination as to the "last time you had any communication to * * * or from Ms. Trout." (Tr. at 191-192.) The trial court again overruled the objection. Maher responded that he talked to Trout "a couple weeks after the [May 19, 1999] judgment entry." (Tr. at 192.) Maher stated that the subject of the conversation "had nothing to do with Steve Maher screwing up" but, rather, the conversation was about Maher talking with potential bankruptcy council about obtaining accurate addresses for the "different plaintiffs." (Tr. at 193.) Again, appellants have failed to demonstrate how they were prejudiced by this testimony. We note that this conversation between Maher and Trout apparently occurred after the attorney-client relationship had ended. We further note that counsel for appellants also inquired of Maher whether he had engaged in "any communication between you and the former client, Paula Trout, since the end of the trial or shortly thereafter?" (Tr. at 242-243.)
Finally, appellants' generalized claim that Maher's testimony was prejudicial "to the extent" it may have contradicted or diminished Stern's testimony is without merit. A review of the trial court's decision indicates that the court found Stern's testimony to be of no evidentiary value. Specifically, the trial court made the following findings regarding the testimony of Stern:
 Although this Court permitted the presentation of testimony of Attorney Bahgat's expert witness, Geoffrey Stern * * *, concerning the issue of the alleged "gross negligence" of Defendant Trout's former trial attorney, Stephen E. Maher, this Court concludes that attorney witness Stern's opinion testimony did not constitute "evidentiary support" under the standards of ORC § 2323.51(A)(2)(iii) and, further, did not constitute admissible "evidence" under the provisions of Evidence Rule 703 * * *[.]
* * *
 As stated in this Court's above Findings of Fact, attorney witness Stern had never examined the exhibits admitted into evidence at, or read the transcript of, the March 18-19, 1999 trial proceedings, and had never read this Court's April 27, 1999 twenty-page "Findings of Fact and Conclusions of Law", or read the Plaintiffs' 1997 Motion for Summary Judgment or Defendant Trout's Memorandum Contra thereto, or read any of the sworn affidavits of Yee Lin Haney, expert attorney Henry P. Wickham, Jr., Defendant Trout herself, or borrower — judgment debtor David Weaver, in support thereof or in opposition thereto, or read this Court's decision denying summary judgment prior to trial. Attorney Stern's opinions were based entirely upon the information and misinformation verbally stated to him by Attorney Bahgat. * * * [Emphasis sic.]
Given the trial court's finding that Stern's testimony lacked evidentiary support, it is difficult to see how testimony of Maher that may have contradicted or diminished Stern's testimony played any role in the trial court's decision. Here, appellant cannot show that any purported attorney-client communications were material to the disposition of this case and, thus, even if privileged, the disclosure of the evidence at issue was not prejudicial to appellants. Accordingly, finding no prejudice to appellants by the trial court's failure to grant the motion in limine, appellants' fifth, sixth and eighth assignments of error are overruled.
The seventh assignment of error of appellants Trout and Roberts and the third and fourth assignments of error of appellant Bahgat are interrelated to the extent that they all raise issues alleging prejudicial error with respect to evidentiary rulings by the trial court during the hearing on the motion for sanctions. As such, we will address these assignments of error together. We note that, while appellants Trout and Roberts, under their seventh assignment of error, contend that the record shows "many errors" in the trial court's rulings, we will only address those specifically cited by appellants.
Appellants Trout and Roberts first contend that the trial court erred in overruling an objection and allowing counsel for appellees to belittle Bahgat, a native of Egypt, about the incorrect usage of a few words. The record indicates that, during the cross-examination of Bahgat, counsel for appellees questioned Bahgat about various portions of the Civ.R. 60(B) motion he filed. On page seventeen of his motion, Bahgat had asserted in part that the "misconduct of Attorney Timothy Crowley vitiated fraud upon the court." (Tr. at 438.) During cross-examination, counsel for appellees asked Bahgat about what he meant by the use of the term "vitiated fraud." Counsel for appellants objected, arguing that, because Bahgat was raised in Egypt, "some of his usage of the English language may not be perfect." (Tr. at 440.) Appellants' counsel also suggested that counsel for appellees was belittling the witness. The trial court overruled the objection.
After reviewing the questioning at issue, it is not clear to this court that counsel's questioning regarding specific language contained in the Civ.R. 60(B) motion can be interpreted as demeaning or belittling the witness. In any event, the matter was tried to the court, and we fail to see how this questioning affected the outcome of the trial.
Appellants Trout and Roberts, as well as appellant Bahgat under his fourth assignment of error, also contend that the trial court erred in refusing to allow appellants to "uncover the fee agreement" between appellees and their lawyer. Appellant Bahgat points to the cross-examination of appellee Haney by counsel for appellants Trout and Roberts. During cross-examination, counsel asked Haney, "What is your agreement with Mr. Crowley with respect to these attorney's fees?" (Tr. at 471.) The trial court sustained an objection by counsel for appellees. Counsel for appellants subsequently argued to the court that "it is perfectly appropriate for me to inquire of her * * * obligation to actually pay him." (Tr. at 476.) The trial court indicated that counsel could ask the witness "if she engaged Mr. Crowley to represent her." (Tr. at 477.) The trial court subsequently asked the witness, "[a]s far as you are concerned, is this a bill that you are responsible for?" (Tr. at 483.) Haney responded, "I believe so. That is my obligator." (Tr. at 483.) The trial court limited further questioning as to the specifics of the fee agreement as irrelevant.
Appellants argue that the ruling of the court precluded them from examining the witness to determine whether there was any actual debt incurred. As noted above, however, the witness stated her belief that she had a legal obligation to pay the expenses at issue. Here, although the trial court limited testimony on this issue, there was evidence indicating that services were rendered on behalf of Haney for her benefit. To the extent that the trial court viewed the client's actual financing of the fee arrangement or the ability of the client to pay as irrelevant, we find no error in the trial court's ruling. We further note that the trial court had before it plaintiffs' Exhibit No. TGC, containing the affidavit of attorney Crowley indicating that legal services on behalf of plaintiffs, "billed at a rate of $150.00 per hour, were personally rendered by Affiant and were performed at the request of, and for the benefit, of said clients, and said legal services were reasonable and necessary." The exhibit contained a detailed listing of the services performed and the time expended for each task.
Appellants Trout and Roberts also summarily state in their brief that, "[t]he Trial Court overruled objections to the admissibility of the Exhibits identified and discussed by Mr. Maher." (Appellants Trout and Roberts brief at 20.) Appellants do not assert, however, how they may have been prejudiced by any of those exhibits and we find no error in the trial court's decision to admit such exhibits.
Under his third assignment of error, Bahgat first contends that the trial court erred in allowing the introduction of evidence of prior contact between Maher and Bahgat in 1991. Specifically, the trial court allowed Maher to testify regarding a domestic relations case in which Maher represented a party attempting to obtain an annulment. After the trial court filed a decree of annulment, Bahgat, on behalf of the other party, filed a Civ.R. 60(B) motion alleging in part fraud upon the court.
Bahgat argues that the only possible purpose for the introduction of this evidence was to somehow establish that appellant was prone to filing motions of this type with similar allegations. Bahgat contends that the trial court "evidently" relied upon this evidence to find that he acted willfully and for the purpose to harass appellees.
Assuming that the testimony at issue was of no relevance to the instant proceedings, we disagree with Bahgat's contention that the trial court "evidently" relied upon this evidence. We have carefully reviewed the trial court's decision granting sanctions and, apart from passing references to the 1991 case in the court's findings of fact, there is no indication that the trial court relied upon the testimony at issue in reaching its result. Accordingly, we find no prejudice to appellants by the court's ruling as to this testimony.
Bahgat also contends that the trial court abused its discretion in allowing attorney Maher to testify in violation of the attorney-client privilege. We have previously addressed the same argument raised by appellants Trout and Roberts under their eighth assignment of error, finding no prejudicial error.
Based upon the foregoing, the seventh assignment of error of appellants Trout and Roberts, and the third and fourth assignments of error of appellant Bahgat are overruled.
The ninth assignment of error of appellants Trout and Roberts and the second assignment of error of appellant Bahgat are interrelated and will be considered together. Both of these assignments of error challenge the trial court's decision to impose sanctions against the various appellants. As noted under the facts, the trial court imposed sanctions against appellant Bahgat pursuant to Civ.R. 11 and R.C. 2323.51, while the court imposed sanctions against appellants Trout and Roberts pursuant to R.C. 2323.51.
Civ.R. 11 states in relevant part as follows:
 Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address, attorney registration number, telephone number, telefax number, if any, and business e-mail address, if any, shall be stated. * * * The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.
The version of former R.C. 2323.51 in effect for purposes of this action states, in pertinent part, as follows:
As used in this section:
* * *
(2) "Frivolous conduct" means either of the following:
 (a) Conduct of an inmate or other party to a civil action, * * * or of the inmate's or other party's counsel of record that satisfies any of the following:
 (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 (iii) Allegations or other factual contentions have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
* * *
 (B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section * * * at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * * the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to a party to the civil action or appeal who was adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section.
* * *
 (4) An award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both.
 (5)(a) In connection with the hearing described in division (B)(2)(a) of this section, each party who may be awarded reasonable attorney's fees and the party's counsel of record may submit to the court or be ordered by the court to submit to it, for consideration in determining the amount of the reasonable attorney's fees, an itemized list or other evidence of the legal services rendered, the time expended in rendering the services * * *.
We will initially address the trial court's finding of sanctions against appellant Bahgat pursuant to Civ.R. 11, and against appellants Bahgat and Trout under R.C. 2323.51. The trial court found that Bahgat's filing of the May 18, 2000 "Motion For Relief From Judgment," the June 30, 2000 "Counsel's Motion To Withdraw," the July 18, 2000 "Motion To Require Attorney Timothy G. Crowley To Withdraw As Counsel For Plaintiff," the July 18, 2000 "Memorandum Contra" the motion for sanctions and the August 29, 2000 "Amended Motion and Memorandum Contra" the motion for sanctions constituted a "willful violation of Civil Rule 11." The court also found that Bahgat's filing of the motion for relief from judgment on behalf of Trout, as well as the other "Trout/Bahgat Motions" (referenced above) served merely to harass or maliciously injure the appellees, that those motions caused a needless increase in appellees' cost of litigation, and that appellees were adversely affected thereby.
The motion for relief from judgment, filed by Bahgat on behalf of Trout, included the following allegations:
 5. This action for legal malpractice was orchestrated by Plaintiff's counsel, Timothy Crowley. As revealed to Attorney Stephen Maher, on September 19, 1994, when Ms. Haney sought Mr. Crowley's legal service, she wanted to sue David Weaver for failing [to] keep his promises to her after he ended his romance with her. Plaintiff's counsel advised her that since David Weaver's corporation was defunct, that she was better off suing Attorney Paula Trout, who was presumed to have malpractice insurance and crafted a scheme to convert legal services rendered, in gratis, into contracted legal duties for fees. On said date about September 26, 1994, unknown to Ms. Trout, Mrs. Haney was instructed to obtain fee statements from Attorney Trout for any services rendered in the past free of charge to establish a cause of action for legal malpractice against Attorney Paula Trout.
 6. * * * Attorney Timothy Crowley, in conspiracy with the Plaintiff, were contemplating a lawsuit against Attorney Paula Trout and were fraudulently generating evidence to supplement missing elements for the cause of action for legal negligence. * * * It is clear that the creation of the fee statement was fraud and deceit crafted by Attorney Crowley with the intention of using the fee statement for purposes other than paying Attorney Trout for the services she rendered.
 Moreover, at trial, the Plaintiff's counsel fraudulently introduced Exhibit 7, being a fabricated self-serving unauthenticated document purported to be a HUD closing statement to give the appearance that the Defendant had received payment for services rendered for Yee Development, when in fact, Plaintiff by her own admission in Court stated that the only payments and/or monies given to the Defendant was for Global Toys.
 7. When the Plaintiff took the witness stand at trial, she surprisingly portrayed an appearance of being naive, helpless, and unable to communicate effectively in the English language. Her portrayal of ignorance and lack of knowledge about the American culture sufficiently misrepresented her image as being victimized as if she were a lamb that was eaten by a wolf. * * *
 8. The Plaintiff, while on the witness stand at trial, engaged in a series of fraud and deception. * * *
* * *
 21. By October 4, 1994, it had been established by testimonial evidence that the Plaintiff and her counsel had been working on developing and fabricating a causal connection in the legal malpractice case. The Plaintiff called [the defendant] and inquired about not being billed for work performed. * * * The Plaintiff stated she did not want any of her work done for free and requested that the Defendant construct a fee statement detailing the services Ms. Trout had previously rendered free of charge * * *. The Defendant asked her why she was so adamant on demanding that a bill be created for payment. The Plaintiff then advised the Defendant that she had been talking to her friend named "Tim," and that he told her she should not receive any work for free and that she should be a responsible person and pay for the service that she received. * * *
* * *
 23. The finding for the Plaintiff in this civil action for malpractice, appears to be solely resting on the testimonial evidence of Attorney Henry P. Wickham serving as an expert witness for the Plaintiff. * * * Mr. Wickham misled the court to believe that the Defendant was under the duties of a commercial lender attorney, that he misrepresented the Defendant's legal obligation to the Plaintiff since the lender and the borrower were in a distinct relationship. * * *
* * *
 26. Finally, but for the gross negligence and inexcusable neglect for Attorney Stephen Maher, the Plaintiff would not have revealed in her fabricated claim against Ms. Trout. * * * Attorney Steven Maher did engage in gross and inexcusable neglect, that he did not depose the Plaintiff, or the Plaintiff's expert witness, did not obtain an expert witness to testify on behalf of the Defendant, and refused to present evidence of the relationship between Yee Lin Haney and David Weaver, which would have exonerated the Defendant from any malpractice or wrong doing. [Emphasis sic.]
In the "law and argument" section of the motion, Bahgat asserted that the facts demonstrated "surprise, fraud, misrepresentation and fraud on the Court," including "[t]he misconduct of Plaintiff's Counsel, Attorney Timothy Crowley, who fraudulently originated a scheme to generate evidence which provided the missing elements for the cause of action for legal negligence." The motion further asserted that "Attorney Timothy Crowley established his complaint for [malpractice] on fraud and therefor[e] the complaint was fraud abinitio [sic]." In the motion, Bahgat argued that Crowley "decided to fabricate evidence of the fee statement to establish the contractual duty between Ms. Trout and Mrs. Haney in order to institute the action for malpractice." It was further asserted that "[t]he cause of action for this malpractice suit contained a sham and a fraudulent element and prosecuting the action before the court was fraud on the court." Bahgat also asserted in the motion that the failure of attorney Maher to perform certain tasks constituted "gross negligence," and that under such circumstances relief under Civ.R. 60(B)(5) was appropriate.
Regarding the "Motion For Relief From Judgment," the trial court found that Bahgat "recklessly asserted allegations of criminal activity, civil fraud and professional misconduct" on the part of plaintiff and her counsel, Crowley. The court found that Bahgat:
 [C]ited no legal authority to support Defendant Trout's bizarre legal arguments that (a) legal services allegedly rendered to Plaintiff "in gratis" were not required to meet the requisite standard of care, or (b) that "evidence of the relationship between the Plaintiff Yee Lin Haney and David Weaver would have exonerated Affiant from any malpractice or wrong-doing" * * *, or (c) that, although "the transaction that Affiant handled for the Plaintiff, involved both parties with diverse interests, Affiant had David Weaver acknowledge in writing * * * that Affiant only represented the Plaintiff" * * *. The evidence at trial and at the hearing on sanctions showed that Defendant Trout obtained no such writing from Plaintiffs Yee Development Corp. or Yee Line Haney to waive any conflict of interest and/or to limit the scope of her (Trout's) representation. * * * [Emphasis sic.]
The court found significant the fact that Bahgat did not file a reply to appellees' memorandum contra and the attached exhibits. The court also incorporated by reference its previous findings of fact and conclusions of law filed in the underlying case on April 27, 1999, which "contradicts Defendant Trout's assertions concerning alleged misrepresentation, perjury, fraud, the alleged fabrication of evidence by Plaintiffs' attorney, the alleged misleading testimony of expert witness Wickham and the alleged inexcusable incompetence of Attorney Maher, all of which would have had to have occurred before this Trial Judge." Regarding the allegations of Bahgat that Wickham misled the court or misrepresented defendant's legal obligation to the plaintiff, the court found that such allegations constituted "an unfounded and unprofessional ad hominem attack upon an attorney who had no personal interest in the outcome of the malpractice action against Attorney Paula J. Trout."
The trial court further noted that Bahgat testified that he had never spoken to Crowley, Wickham or Maher "to investigate, confirm or refute his suspicions, speculations and unfounded `beliefs' about the previous malpractice proceedings against Defendant Trout." The court held that, instead of conducting a diligent and objective investigation, Bahgat sought advice from attorney Geoffrey Stern and attorney Robert Mann. During the sanctions hearing, Stern admitted that he had never read the trial transcript, that he had never examined trial exhibits, and that he had not reviewed the final motion for relief from judgment until several days after it had been filed. The court noted that "Bahgat admitted in his testimony at the hearing on sanctions that Attorney * * * Mann had obtained his knowledge of the `facts' concerning the malpractice case entirely from * * * Bahgat and * * * Trout, and that * * * Mann had never read the trial transcript or examined the trial exhibits or this Court's file."
The trial court thus concluded that "Bahgat's inexcusable failure to adequately investigate Defendant Trout's claims and accusations was willful conduct and that it constituted a willful violation of Civil Rule 11 which requires that an attorney must state facts to the best of his knowledge, information and belief." The court also found that Bahgat's filing of the motion for relief from judgment "served merely to harass or maliciously injure Plaintiffs, and that it caused a needless increase in Plaintiffs' cost of litigation, and that Plaintiffs were adversely affected thereby."
In Bahgat's motion to withdraw as counsel for Trout, filed June 30, 2000, Bahgat asserted that, during the course of his investigation of Trout's claim under Civ.R. 60(B), he (Bahgat) spoke with attorney Maher, and that a statement was made by Maher "that goes to the heart of Defendant's meritorious claim or defense." Bahgat contended that, because Maher subsequently "claimed that he had no recollection of making or not making such statements * * * it became apparent that the testimony of Defendant's counsel is likely to * * * become necessary." The alleged statement involved Bahgat's assertion that Maher had told him that Crowley advised his client, Haney, to sue Trout, rather than Weaver, because of financial considerations. During the hearing on sanctions, Maher testified that he spoke with Bahgat on the telephone regarding a certain paragraph in the Civ.R. 60(B) motion "that had something to do with what Tim Crowley said to Yee Lin Haney, and that I told, supposedly told Mr. Bahgat what Tim Crowley said." (Tr. at 166.) According to Maher, "Bahgat asked me to sign an affidavit in support of that particular paragraph and indicted that if the 60 (B) is sustained, the malpractice would go away." (Tr. at 166.) Maher stated that he "declined signing the affidavit because it was inconsistent with my recollection of the conversation that I had with Mr. Bahgat back in October of '99." (Tr. at 166.) The record indicates that the basis for Trout's July 18, 2000 motion for continuance was Bahgat's contention that he had "learned of new facts and circumstances that requires him to be called as a witness on behalf of his client."
In the motion filed by Bahgat seeking the court to require attorney Crowley to withdraw as counsel for plaintiffs, Bahgat asserted, similar to his Civ.R. 60(B) motion, that the action for malpractice was "orchestrated" by attorney Crowley. Bahgat asserted that on September 19, 1994, when plaintiff first sought Crowley's professional services, "it was to sue David Weaver for not keeping his promises to her after he ended his romance with her." Bahgat further asserted in the motion that "Plaintiff's counsel advised her then that since David Weaver's corporation was defunct, she was better off suing Affiant, who was presumed to have malpractice insurance, and crafted a scheme to convert legal services rendered in gratis into contract legal duties for fees." Bahgat asserted that, "Crowley's continued representation of his client during the said proceeding would be prejudicial to the administration of justice."
It has been noted that "the purpose of Civ.R. 11 is to ensure that a pleading is filed in good faith with adequate supporting grounds." Stone v. House of Day Funeral Serv., Inc. (2000), 140 Ohio App.3d 713, 720. Upon review, we find that the evidence amply supports the trial court's determination that Bahgat's motion for relief from judgment, as well as the related filings, were filed without good grounds and constituted a willful violation of Civ.R. 11. We agree with the trial court's finding that the purported facts surrounding the allegations made by Bahgat were based in large part upon his "suspicions, speculations and unfounded `beliefs' about the previous malpractice proceedings against * * * Trout." A reasonable investigation of the facts of this case should have apprised Bahgat that facts or law did not support the motion. As an example of counsel's failure to adequately investigate the case, we note that one of the allegations in the Civ.R. 60(B) motion was that appellees' counsel "fraudulently" introduced Exhibit 7 at trial, purporting to be a HUD closing statement and submitted to give the appearance that Trout had received payment for services rendered. The trial court noted that, during the 1999 trial, Trout never testified about any fraud concerning the allegedly fabricated document. Further, during the sanctions hearing, Bahgat admitted that he "didn't know" that the document had never been admitted into evidence at that trial. (Tr. at 328.) The court also found that Trout's sworn affidavit concerning her preparation of "re-issued" invoices was "contrary to historical fact."
Bahgat's motion for relief from judgment was twenty-one pages long and contained numerous contentions that were baseless and inflammatory. The trial court deemed "disingenuous and reprehensible" Bahgat's contention that he was justified in filing the motion for relief from judgment, consisting of "poison-pen accusations of fraudulent conduct, perjury, subornation of perjury and fraud upon this Court by * * * Haney and * * * Crowley * * * because of Attorney Maher's conduct." The court noted that, when challenged at the sanctions hearing on cross-examination regarding his defamatory accusations, Bahgat "sanctimoniously and self-righteously testified that sometimes it is `good' to call people liars and that accusations of `fraud upon the court' or other misconduct is a risk that one assumes when he decides to enter into the practice of law." We agree with the trial court that the personal attacks contained within the motion demonstrated unprofessional conduct.
The court also found that Bahgat's testimony indicated that the filing of his last-minute Civ.R. 60(B) motion was an "attempt to bolster Paula J. Trout's defense in the proceedings still pending before Ohio Disciplinary Counsel." Further, attached to Bahgat's motion was the affidavit of Trout, containing many of the same allegations described above, and averred to have been signed by Trout on May 18, 2000. Bahgat's testimony at the sanctions hearing included his admission that the accompanying affidavit of Trout, in which Trout's signature was notarized by Bahgat on May 18, 2000, was not signed by Trout in his presence. When asked when Trout signed the document, Bahgat stated, "I really don't know when she signed it." (Tr. at 281.)
In addition to challenging the trial court's finding of sanctions, appellant Bahgat also challenges the type of sanctions imposed by the court. Bahgat notes that, in addition to monetary sanctions, the trial court required that he attend certain seminars (including a training seminar on notary laws), and that he read the Rules of Civil Procedure and file a report with the court regarding his understanding of those rules. Bahgat appears to contend that the court was limited to imposing monetary sanctions for a violation of Civ.R. 11. We disagree.
Civ.R. 11 provides in part that, "[f]or a willful violation of this rule, an attorney * * * may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." In Stevens v. Kiraly (1985), 24 Ohio App.3d 211, 213, the court held that, while an award of attorney's fees is a proper sanction under Civ.R. 11, "it is not the only available sanction." Rather, "the nature of the sanction is not fixed and is to be determined on a case-by-case basis." Id. at 214. While Bahgat argues that the Stevens case was decided prior to the amendment of Civ.R. 11, we do not find that the language of the subsequent amendment limited awards to solely monetary sanctions.
The record also contains clear evidence to support the trial court's imposition of sanctions against Bahgat and Trout pursuant to R.C. 2323.51. A counsel's failure to adequately investigate a claim can constitute frivolous conduct under R.C. 2323.51. Stone, supra, at 724. Frivolous conduct also includes "conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." Sain v. Roo (Oct. 23, 2001), Franklin App. No. 01AP-360, unreported, citing R.C.2323.51(A)(2)(a)(ii). Appellants failed, at the sanctions hearing, to substantiate the serious charges set forth in the motion for relief from judgment. As noted above, the trial court deemed especially reprehensible, as does this court, appellants' allegations that individuals committed perjury, such allegations being made without evidentiary support.
Further, we find no error with the trial court's determination that there was no "colorable legal argument" that Trout "could have been `exonerated' even if she had never presented any billing for legal services" rendered to appellees, or even if the relationship between Haney and borrower David Weaver "had been anything more than a business one." The trial court noted that, throughout the proceedings, Bahgat "continued to assert and advocate the nonsensical argument that `in gratis' legal services create no obligation to a client." We also find no error with the trial court's determination that the evidence did not support a finding that Maher failed to conform to the standard required by law, or that there was a causal connection between Maher's conduct as trial counsel for Trout and the trial court's judgment of May 19, 1999 rendered in favor of appellees.
We further note that, under the motion for relief from judgment, appellants argued, in part, that relief was appropriate under Civ.R. 60(B)(5) based upon appellants' contention that attorney Maher's conduct constituted "gross negligence." However, Ohio courts have held that "[t]he neglect of a client's attorney is imputed to [the] party for purposes of 60(B)(1)," and that if an attorney engages in malpractice, the client's remedy is against the attorney for malpractice; therefore, Civ.R. 60(B)(5) "is not to be used as a substitute for other provisions of Civil Rule 60(B)." Baysinger v. Home Developers, Inc. (Mar. 29, 2001), Cuyahoga App. No. 78443, unreported. See, also, Parkhurst v. Snively (Oct. 10, 2001), Medina App. No. 3179-M, unreported ("if the actions of [client's] attorney did rise to more than negligence and were inexcusable, [there] are still not grounds for relief under Civ.R. 60(B)(5), as inexcusable neglect of an attorney will not be imputed to the client").
Regarding appellees' motion for sanctions pursuant to R.C. 2323.51
against attorney Roberts, the trial court found that appellees were "not entitled to an award against Attorney Roberts related to his representation of Defendant Paula J. Trout in matters for which Plaintiffs would have otherwise incurred litigation expenses in prosecuting their Motions against Attorney Bahgat and Defendant Trout." However, the court found that the filing of the August 21, 2000 motion to dismiss for lack of subject matter jurisdiction, and the filing of the untimely memorandum contra appellees' motion for sanctions constituted frivolous conduct. The court held, in part, that those filings served merely to harass appellees and that they were not warranted under existing law and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
We have previously addressed and rejected appellants' contention that the trial court erred in overruling appellants' motion to dismiss for lack of subject matter jurisdiction. The cases relied upon by appellants did not support the proposition they advanced, and we find no error in the trial court's determination that the filing of the motion at issue was not warranted under existing law. Similarly, the trial court could have concluded that existing law did not support appellants' contention that the motion for sanctions was in the nature of a pleading, such that the motion to dismiss for lack of subject matter jurisdiction stayed the time period for filing appellants' memorandum contra under Civ.R. 12(A)(2). Accordingly, we will not disturb the trial court's imposition of sanctions against Roberts under R.C. 2323.51.
Finally, appellant Bahgat, in a conclusory manner, challenges the amount of sanctions imposed. However, except for the broad assertion that the sanctions were "vague, excessive and unreasonable," Bahgat does not point to any evidence indicating that the fees were unreasonable. In the present case, the trial court noted that counsel for appellees submitted an itemized billing statement, as well as a supporting affidavit regarding services rendered. The court found that the submitted materials satisfied the requirements of R.C. 2323.51(B)(4), that the services and hourly billing rate were reasonable and necessary, and that the services were rendered to appellees at the request of appellees. We conclude that there was evidence in the record to support the amount of fees awarded, and thus we find no merit to Bahgat's contention that the fees were unreasonable.
Accordingly, the ninth assignment of error of appellants Trout and Roberts and the second assignment of error of appellant Bahgat are overruled.
Based upon the foregoing, the first, second, third, fourth, fifth, sixth, seventh, eighth and ninth assignments of error of appellants Trout and Roberts are overruled, the first, second, third and fourth assignments of error of appellant Bahgat are overruled, and the judgments of the Franklin County Court of Common Pleas are hereby affirmed.
BRYANT and LAZARUS, JJ., concur.